

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-12-00020-CR

_____

GREGORY GUTIERREZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the County Court at Law No. 1
Lubbock County, Texas
Trial Court No. 2011-465,478, Honorable Cecil Puryear, Presiding

May 13, 2013

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, Gregory Gutierrez, pled guilty to misdemeanor driving while intoxicated[1] and was sentenced to thirty days confinement. In a single issue, Appellant asserts the trial court erred by denying his motion to suppress because reasonable suspicion did not exist for his initial detention. We affirm.

_____
[1]See TEX. PENAL CODE ANN. § 49.04 (WEST SUPP. 2012).

**BACKGROUND**

In July 2011, an information issued alleging Appellant operated a motor vehicle in a public place while intoxicated on July 9, 2011. Appellant subsequently filed a motion to suppress his statements, all physical evidence and any testimony by law enforcement officers related to his traffic stop.

At the suppression hearing, Officer Jason Hancock testified that, on July 9, 2011, he received a call from dispatch at 3:08 a.m. indicating that Sarah Martinez was being followed by an unknown driver in a red Saturn SUV. Martinez made the original 911 call from south Lubbock after the Saturn's driver made contact with her at the Covenant Hospital and then began following her. She described the driver as a Hispanic male with a bald or shaved head. She did not know the driver and was frightened.

Officer Hancock testified he received updates from the dispatcher until he spotted the two vehicles at 3:30 a.m. approximately five miles from where Martinez originally called the dispatcher. Both vehicles were stopped at a traffic light at the intersection of South Loop and University. Although the red SUV had violated no traffic laws, Officer Hancock believed it was unusual for a male to follow a female whom he did not know, for nearly a half-an-hour, across town, at 3:00 a.m. Based on this information, he wanted to speak with the driver and find out why he was following Martinez. He activated his overhead lights and stopped the SUV.[2] Martinez subsequently stopped in a parking lot.

---

[2]Officer Hancock testified he did not recall whether he, or another officer in front of him, first activated their lights and made the stop. However, following the stop, Officer Hancock was the first officer to approach Appellant's SUV and interact with him. The other officer did not testify at the suppression hearing.

When Officer Hancock approached the SUV, an odor of alcoholic beverage and burnt marijuana emanated from its cab. An open container of beer was in the console. Appellant smelled of alcoholic beverage and his speech was slurred. After administering the Horizontal Gaze Nystagmus test, walk-and-turn test and one-leg stand test, Officer Hancock arrested Appellant for driving while intoxicated.

Officer Adam Freeman next testified he also overheard the dispatcher describe what he characterized as a "rolling civil disturbance." When he arrived at South Loop and University Avenue, he observed Appellant was stopped by law enforcement vehicles with their emergency lights activated. He subsequently made contact with Martinez in a parking lot and described her demeanor as relieved, visibly shaken, frightened, and cycling between crying and calm. The State then played Martinez's 911 call for the trial court without objection.

Appellant subsequently testified he was not in the parking lot at Covenant Hospital at 3:00 a.m., did not contact Martinez and denied following her. He testified he left a sports bar at about 3:00 a.m. and was driving to his girlfriend's house when he was stopped. The trial court subsequently issued its *Findings of Fact* as follows:

> 1. On July 9, 2011, at approximately 3:08 a.m., a complaining party identifying herself as Sarah Martinez, while in the operation of her motor vehicle, a white Mustang, contacts 911 from her mobile phone and reports to dispatch that an unknown Hispanic male is closely following behind her in a red Saturn SUV.
>
> 2. Martinez reports that, minutes prior to initiating the 911 call, she was leaving her place of employment at Covenant Women's and Children's Hospital (4000 24th Street). As she approached her vehicle, walking in the Covenant parking lot, an unknown bald Hispanic male driving a red Saturn SUV briefly made contact with her.

3

3. Following this brief contact, Martinez enters her vehicle and departs from Covenant intending to drive to her residence, but quickly notices that the male, in operation of the red SUV is following her.

4. Martinez, reports that despite her efforts to evade him, the unknown male follows closely behind her vehicle for several city blocks. She reports to 911 dispatch, *". . . still following me, I'm not even close to home. I took all these detours . . . I'm turning as much as I can and they are still following me, it's kind of freaking me out."* [Emphasis supplied].

5. Martinez reports that the male subject followed her from the Covenant Hospital parking lot; onto Marsha Sharp Freeway; to 82th (sic) street and Iola; onto 82nd street traveling east towards University, and; onto University traveling north.

6. At the intersection of the South Loop and University, Corporal Jason Hancock, responding to the 911 call, observes a red Saturn positioned behind a white Mustang. Hancock initiates a traffic stop on the red Saturn SUV.

7. Hancock and Officer Chris Talbert approach the red Saturn. The driver is subsequently identified as Gregory Gutierrez, a [H]ispanic male matching the description provided by Martinez.

8. Officer Adam Freeman interviews the driver of the white Mustang, Freeman confirms that the operator of the white Mustang is the 911 caller, Sarah Martinez. Martinez identifies the operator of the red Saturn, now being questioned by Officer Hancock, as the unknown [H]ispanic male who followed her from Covenant Hospital.

9. Upon approaching the driver's side window, Hancock smells a strong odor of an alcoholic beverage and the distinct odor of marijuana. Further, Hancock observes, within the driver's reach, a Budweiser can sitting in the center cup holder. Gutierrez (sic) eyes were glassy and he responds slowly to questioning with slurred speech. Gutierrez admits to drinking three to four beers, including the beer in the cup holder. Following these statements and observations, Hancock asks Martinez (sic) [Gutierrez] to exit the vehicle and proceeds to administer standardized field sobriety testing on Martinez (sic) [Gutierrez].

10. Based on the totality of the circumstances, Hancock arrests Martinez (sic) [Gutierrez] for driving while intoxicated.

In its *Conclusions of Law,* the trial court determined that Officer Hancock had a

reasonable suspicion to believe Appellant was, had been, or soon would be engaged in

4

criminal activity because Sarah Martinez reported in her 911 call that she was being followed by an unknown male, she was frightened, she did not know the person and, despite her efforts to evade him, he continued to follow her for several city blocks. The Court also found the testimony of Officers Hancock and Freeman credible.

Appellant pled guilty to the misdemeanor offense of driving while intoxicated and was sentenced to thirty days confinement. This appeal followed.

### STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion; *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000), while applying a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 493 (Tex.Crim.App. 2005). In reviewing the trial court's decision, we do not engage in our own factual review; rather, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *St. George v. State,* 237 S.W.3d 720, 725 (Tex.Crim.App. 2007). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, especially when based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Ford,* 158 S.W.3d at 493. Appellate courts review *de novo* "mixed questions of law and fact" that do not depend upon credibility and demeanor. *Id.*

When the trial court makes explicit findings, as it did here, we determine whether the evidence, when viewed in a light most favorable to the trial court's ruling, supports those fact findings. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex.Crim.App. 2007). We must

5

uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex.Crim.App. 2007).

## INVESTIGATIVE DETENTION

The United States Constitution and the Texas Constitution secure the individual right to be free from all unreasonable searches and seizures. U.S. Const. amend. VI; Tex. Const. art. I, § 9. "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 998 (1968). *See Garza v. State,* 771 S.W.2d 549, 558 (Tex.Crim.App. 1989) (Stopping an automobile and detaining its occupants for an investigation is considered a "seizure.") An investigative detention occurs when a police officer detains a person reasonably suspected of criminal activity to determine his identity or momentarily maintain the *status quo* while seeking additional information. *Hoag v. State*, 728 S.W.2d 375, 380 (Tex.Crim.App. 1987).

An investigatory stop is justified if, based upon the totality of the circumstances, the detaining officer has an objective basis for suspecting that the person stopped is, or is about to be, engaged in criminal activity.[3] *Stewart v. State,* 22 S.W.3d 646, 648 (Tex.App.—Austin 2000, pet. ref'd) (citing *Woods v. State,* 956 S.W.2d 33, 38 (Tex.Crim.App. 1997)). While a law enforcement officer need not have probable cause to detain an individual for investigative purposes; *Hall v. State*, 74 S.W.3d 521, 525 (Tex.App.—Amarillo 2002, no pet.), a reasonable suspicion means more than an

---

[3]This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Ford*, 158 S.W.3d at 492-93.

inarticulate hunch or suspicion. *See Bobo v. State*, 843 S.W.2d 572, 575 (Tex.Crim.App. 1992) ("Mere suspicions do not meet this test, but neither is absolute certainty required.") *See also Davis v. State,* 947 S.W.2d 240, 244 (Tex.Crim.App. 1997).

Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in a criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex.Crim.App. 2007). The acts or circumstances need not be criminal themselves to create reasonable suspicion; *Woods*, 956 S.W.2d at 38, however, the facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime. *Derichsweiler v. State,* 348 S.W.3d 906, 916 (Tex.Crim.App. 2011), *cert. denied,* ___ U.S. ___, 132 S.Ct. 150, 181 L.Ed.2d 67 (2011). Further, "it is not a *sine qua non* of reasonable suspicion that a detaining officer be able to pinpoint a particular penal infraction." *Id.* Thus, we examine the totality of circumstances to determine whether Appellant's detention and the subsequent investigation were reasonable and justified. *See Curtis v. State*, 238 S.W.3d 376, 380 (Tex.Crim.App. 2007); *Castro*, 227 S.W.3d at 741. This analysis includes the police officers' training and experience. *State v. Alderete,* 314 S.W.3d 469, 473 (Tex.App.—El Paso 2010, pet. ref'd) ("[W]hen innocent facts, meaningless to the untrained, are used by law-enforcement officers, those facts, combined with permissible deductions therefrom, may form a legitimate basis for suspicion of criminal activity.")

7

The detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists. *Derichsweiler,* 348 S.W.3d at 914. A police dispatcher is ordinarily regarded as a "cooperating officer" for purposes of making this determination. *Id.* Finally, information provided to police from a citizen-informant who identifies himself or herself and may be held to account for the accuracy and veracity of his or her report may be regarded as reliable. *Id.* at 914-15. *See Martinez v. State,* 348 S.W.3d 919, 923 (Tex.Crim.App. 2011) (citing *Brother v. State,* 166 S.W.3d 255, 257 (Tex.Crim.App. 2005)). In such a scenario, the only question is whether the information that the known citizen-informant provides, viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot; *Derichsweiler,* 348 S.W.3d at 915, i.e., "suggest[s] that *something* or an apparently criminal nature is brewing." *Id.* at 917. (Emphasis supplied).

### ANALYSIS

Appellant asserts the trial court erred because Officer Hancock lacked reasonable suspicion to stop his SUV. He contends the information Martinez provided to the dispatcher that was subsequently conveyed to Officer Hancock did not contain specific, articulable facts sufficient to allow him to form a reasonable suspicion that Appellant had been, was, or soon would be engaged in a criminal activity. We disagree.

Martinez identified herself when she called the police department. She gave her name to the 911 operator, gave an ongoing description of Appellant's activities firsthand, put herself in a position of accountability, and was neither a paid informant nor connected to law enforcement. Thus, the information Martinez provided to the police may be regarded as reliable. *See Derichsweiler*, 348 S.W.3d at 916-17.

The dispatcher conveyed to Officer Hancock that Martinez was being followed at 3:00 a.m. by a man she did not know; the man was driving a red Saturn SUV; she had been followed across town for more than five miles, and she was frightened. When Officer Hancock arrived at the location of the two vehicles per the dispatcher's directions, he observed a red Saturn SUV stopped behind Martinez's car at a traffic light. *See State v. Stolte,* 991 S.W.2d 336, 341 (Tex.App.—Fort Worth 1999, no pet.) (officer's subsequent corroboration of information received from informant may increase the reliability of the information). These facts indicated to Officer Hancock that Appellant was engaging in a pattern of repetitious behavior that was unusual and suspicious, i.e., continuously following a stranger in the early morning hours for several miles in and around Lubbock*. See Derichsweiler,* 348 S.W.3d at 917 (non-criminal behavior conveyed by identified informant—repeatedly stopping near, staring, and smiling in a strange manner at other people and vehicles in public parking lots—held sufficient to allow a reasonable person to conclude "that criminal activity is afoot"). *See also Parson v. State,* No. 11-10-00244, 2012 Tex. App. LEXIS 8700, at *12-14 (Tex.App.—Eastland 2012, no pet. h.) (mem.op.) (non-criminal behavior conveyed by identified informant—man in dark-colored pick-up identified as Stanley parked in driveway facing residence of ex-girlfriend who feared for her children due to their past

relationship—held sufficient to justify reasonable suspicion by officer that domestic violence might occur).

Appellant asserts the State failed to meet its burden of proof at the suppression hearing because the officer that initiated the traffic stop did not testify and the community caretaking function[4] was inapplicable. First, we would note that the trial court's finding that Officer Hancock initiated the stop is supported by the evidence. Secondly, even assuming the trial court was incorrect in this finding, we are aware of no legal requirement, and Appellant does not cite us to any, requiring that the officer who initiates a traffic stop testify at a suppression hearing. Officer Hancock testified that he and the other officer, while in separate patrol cars, simultaneously stopped Appellant. In that regard, it is the cumulative information known to the cooperating officers at the time of the stop that is to be considered in determining whether reasonable suspicion exists. *Derichsweiler,* 348 S.W.3d at 914 (citing *Hoag,* 728 S.W.2d at 380). Based on our review of the evidence, we conclude that the totality of the circumstances gave rise to a reasonable suspicion that Appellant was about to engage in criminal activity. The facts known to Officer Hancock, the dispatcher and other cooperating officers were sufficient to suggest that something of an apparently criminal nature was brewing. *See Derichsweiler,* 348 S.W.3d at 917. Because we find that the State met its burden of proving that the cooperating officers had reasonable suspicion to initiate Appellant's stop, we need not determine whether the community caretaking function was also

---

[4]The community caretaking exception allows an officer to reasonably seize an individual without having reasonable suspicion or probable cause when, as part of his duty to "serve and protect," he "stop[s] and assist[s] an individual whom a reasonable person, given the totality of circumstances, would believe is in need of help." *See Hernandez v. State,* 376 S.W.3d 863, 873 (Tex.App.—Fort Worth 2012, no pet. h.) (quoting *Wright v. State,* 7 S.W.3d 148, 151 (Tex.Crim.App. 1999)).

10

applicable.  The State having met its burden of proof, the trial court did not err by denying Appellant's motion to suppress.  Appellant's single issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.