Michael David **HOAG**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 943–85.

Court of Criminal Appeals of Texas, En Banc.

April 15, 1987.

Stephen E. Van Gaasbeck, San Antonio, for appellant.

Sam D. Millsap, Jr., Dist. Atty., and Beth Taylor, Linda C. Anderson & Barbara Hervey, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

The appellant was convicted, in a nonjury trial, of the offense of burglary of a habitation. V.T.C.A., Penal Code § 30.02(a)(1). Punishment, enhanced by a prior felony conviction, was assessed at thirty years' imprisonment in the Texas Department of Corrections. The San Antonio Court of Appeals affirmed the conviction. *Hoag v. State*, 693 S.W.2d 718 (Tex.App.—San Antonio 1985).

We granted the appellant's petition for discretionary review to determine the legality of the detention of the appellant and of the resulting search of his car. We will reverse.

### I.

On July 26, 1983, Officer Roger Miller, a burglary detective for the San Antonio Police Department, received a telephone report of a burglary. Witnesses to the burglary gave a general description of the burglar, a description of the burglar's car and the license number of the car. Investigation revealed that the appellant was the owner of the car and that he was on parole for burglary. The witnesses picked the appellant's picture from a photo array as being that of a person who "looked like the one that was involved in the burglary," but they were unable to identify the appellant positively.

Rather than obtaining a warrant to arrest the appellant for burglary, Miller contacted detectives assigned to the burglary task force and asked them to place the appellant under surveillance "to see if [they] could apprehend him in a burglary." On July 27, task force detectives observed the appellant leave his apartment at 10:30 a.m. and drive slowly down several streets in a residential area. After about 45 minutes, the officers lost contact with the appellant.

The next day, July 28, the task force detectives resumed their surveillance of the appellant outside his home. The appellant left his apartment at 10:40 a.m. and drove to another residential area. He parked behind an apartment complex and walked down two blocks to a neighborhood. He approached a house, knocked on the door, and looked around "very suspiciously." He then walked around the side of the house into the back yard, returned in a few minutes and walked back to his car. Two officers checked the house for signs of burglary and found none.

At some point during the surveillance, an officer saw the appellant approach another house, look around, and then "look at the garage door and see if it would open."

The appellant drove to another apartment complex and went inside for three to five minutes. When the appellant returned to his car, the officers did not observe him carrying anything in his hands.

Next, the appellant drove to a third apartment complex, pulled into the parking lot behind the complex, and went in. After about thirty minutes, the appellant came out of the complex carrying a newspaper and a canned drink. He opened the car door, took something out of his pocket and put it on the floor on the driver's side. After the appellant drove away, two officers went into the apartment complex and looked, without success, for an apartment that might have been burglarized. The appellant was pulled over by a patrol car a few blocks away from the apartment complex.

Officer James Eigner approached the appellant and asked him to get out of the car. The appellant was taken, at gunpoint, to the rear of the car, where the officers read him his *Miranda*[1] warnings. Eigner then went back to the driver's side of the car. He looked inside and saw an orange-han-

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

dled diving knife sticking out from under the driver's seat and a "fairly large size lump" under the rubber floormat on the driver's side. Eigner picked up the knife, flipped back the floormat and discovered jewelry and coins. At no time did the police officers obtain a warrant to arrest the appellant or to search his car.

The trial court denied the appellant's pre-trial motion to suppress. The items discovered in the search were admitted in evidence. At the end of the hearing on the appellant's motion to suppress, the trial judge made the following ruling: "I think that based on the evidence that I've heard that there were sufficient facts for the police officers to go ahead and stop your client. So your motion to suppress is denied." From this statement, it is not clear whether the trial court found that those "sufficient facts" constituted sufficient articulable facts for an investigative stop or probable cause for an arrest. However, the Court of Appeals held that *either* finding could be supported by evidence in the record, and, therefore, it addressed the validity of the stop on both grounds. *Hoag*, 693 S.W.2d at 721.

## II.

The Court of Appeals justified the search on two independent grounds. First, it found that the officers were justified in temporarily detaining the appellant while other officers sought to locate evidence of an attempted burglary in the apartment complex. After the appellant was stopped, the knife and the bulge in the floormat were seen in plain view, thereby justifying a full search of the car.[2] *Id.* at 720. Second, the Court of Appeals opined that a warrantless arrest of the appellant was proper under either of two theories: (1) that the appellant had committed a burglary or was in possession of stolen property in the officers' presence, see Article 14.-

01(b), V.A.C.C.P.; or (2) that the appellant was in a suspicious place under circumstances which reasonably showed that he had committed a felony, see Article 14.-03(a), V.A.C.C.P. Therefore, a search of the appellant's car was permissible as having been conducted pursuant to a valid arrest.[3] *Id.* at 722.

In his petition for discretionary review, the appellant challenges the legality of his detention and the subsequent search of his car. He argues that the stop in his case was an illegal warrantless arrest rather than an investigative detention. He also contends that even if the stop was a proper investigative detention, the search of his car was not justifiable as being within the scope of a permissible search. We will first address the issue of whether the search was conducted pursuant to a valid arrest.

## A.

In his second ground for review, the appellant contends that "[t]he [Court of Appeals'] opinion is in error because it finds that [his] arrest was only an investigative detention." In essence, the appellant argues that the circumstances surrounding his stop point to an arrest, that the arrest was improper, and that the fruits of the search incident to that arrest should not have been admitted. We agree.

■ Detective Eigner, after describing the detention of the appellant and the search of his car, stated that he felt that the appellant was under arrest when his car was stopped. We acknowledge that the question of whether a person is under arrest is not to be determined solely by the opinion of the arresting officer. See *Ruth v. State*, 645 S.W.2d 432 (Tex.Cr.App.1979); *Boone v. State*, 629 S.W.2d 786 (Tex.App. —Houston [14th Dist.] 1981, no pet.).

**2.** Although it did not explicitly so state, the Court of Appeals apparently relied upon federal constitutional law in reaching its conclusion, since the cases cited in its opinion are based upon *Terry v. Ohio*, and its progeny. See, e.g., *Brem v. State*, 571 S.W.2d 314 (Tex.Cr.App. 1978); *Shaffer v. State*, 562 S.W.2d 853 (Tex.Cr. App.1978); *Armstrong v. State*, 550 S.W.2d 25

(Tex.Cr.App.1977); *Ablon v. State*, 537 S.W.2d 267 (Tex.Cr.App.1976).

**3.** The Court of Appeals based this finding on Texas statutory provisions only. It did not rely upon any federal or state constitutional provision.

Rather, the officer's opinion is a factor to be considered, along with the other facts and circumstances of the detention, in determining whether an arrest has taken place.

█ Article 15.22, V.A.C.C.P., states, in pertinent part, that "[a] person is arrested when he has been actually placed under restraint or taken into custody ... by an officer ... arresting without a warrant." An arrest is complete when a person's liberty of movement is restricted or restrained. *Brewster v. State*, 606 S.W.2d 325 (Tex.Cr.App.1980); *Hardinge v. State*, 500 S.W.2d 870 (Tex.Cr.App.1973).

█ Here, the police officers removed the appellant from his car at gunpoint, took him to the rear of the car and gave him the *Miranda* warnings. Given these facts, along with the officer's testimony that he believed that the appellant was under arrest, we find that the appellant was "placed under restraint" within the meaning of Article 15.22. Accordingly, we find that the appellant's detention constituted a warrantless arrest. Next, we turn to the question of whether the arrest of the appellant was proper.

█ The Court of Appeals held that the appellant's arrest was proper under Article 14.01(b), supra, because it was reasonable for the officers to believe that the appellant had committed a burglary or was in possession of stolen property in the officers' presence. However, the record does not support either of these conclusions.

The officers observed the appellant park his car and enter an apartment complex. When the appellant emerged from the complex, he was carrying a newspaper and a soft drink. The officers saw the appellant take something out of his pocket and put it on the floor of the car. Suspecting that a burglary had taken place, the officers checked the complex for signs that an apartment had been burglarized and found none. We are unable to conclude that these facts indicate in any way that the appellant had committed a burglary or possessed stolen property in the officers' presence. Hence, we find that the arrest can not be justified on the basis of Article 14.01(b), supra.

In upholding the appellant's arrest, the Court of Appeals also relied on Article 14.-03(a)(1), supra, which authorizes police to arrest without a warrant "persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony...." Again, this conclusion is not supported by the record.

In his testimony on cross-examination, Officer Morales, a member of the surveillance team was asked the following questions:

Q: Without the supposition in your mind supplied to you by Detective Miller that this was a burglar about to burglarize something, did he do anything that was unlawful that you saw?

A: No, sir.

Q: Is it correct that his acts of going to these different apartment complexes could have been simply his going to see friends, and one of them wasn't home and one of them was home?

A: It's possible.

Q: All right. Also, the very fact that he brought something out of one of the apartment complexes, without any further knowledge of where he obtained it, he could have just as easily gone in and seen somebody at one of the apartments and gotten something from them and brought it out to his car; is that correct?

A: Yes, sir.

█ In determining whether a warrantless arrest may be justified under Article 14.03(a)(1), supra, this Court has held that where events are as consistent with innocent activity as with criminal activity, the detention of a suspect based on those events is unlawful. *Johnson v. State*, 658 S.W.2d 623 (Tex.Cr.App.1983); *Schwartz v. State*, 635 S.W.2d 545 (Tex.Cr.App.1982). Although the circumstances here may have reasonably shown that the appellant was about to commit a crime, there was *no* indication that a crime had already been committed. Since the officers checked the apartment complex and failed to find any

signs of burglary, we find no circumstances which could have reasonably shown that the appellant had been guilty of burglary. Therefore, the warrantless arrest can not be upheld under Article 14.03(a)(1), supra.

Having found that the arrest of the appellant was unlawful, we hold that the items seized as a result of the search pursuant to that unlawful arrest should not have been admitted in evidence. See Article 38.23, V.A.C.C.P. However, we must next determine whether the Court of Appeals' decision could correctly have been supported by their alternative ground.

### B.

In his first ground for review, the appellant contends that "[t]he [Court of Appeals'] opinion is in error because it allows a full search of persons and vehicles in the course of an investigative detention." In resolving this issue, our inquiry is twofold: first, whether the initial stop was justified; and, second, whether the search of the appellant's car was within the proper scope of a search pursuant to an investigative detention.

Consistent with the Fourth Amendment, a police officer may briefly stop a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information. *Gearing v. State*, 685 S.W.2d 326 (Tex.Cr.App.1985). In order to justify a temporary detention, the officer must have specific articulable facts which, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen stopped for further investigation. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Anderson v. State*, 701 S.W.2d 868 (Tex.Cr.App.1985), cert. denied, — U.S. ——, 107 S.Ct. 239, 93 L.Ed.2d 163. "[T]he inarticulate hunch, suspicion, or good faith of the investigating officer is never sufficient to justify a police officer to order a subject to stop his motor vehicle or to order a subject from his automobile." *Glass v. State*, 681 S.W.2d 599, 601 (Tex.Cr.App. 1984). There must be a reasonable suspi-

cion by the officer that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime. *Daniels v. State*, 718 S.W.2d 702 (Tex.Cr.App.1986); *Johnson v. State*, 658 S.W.2d 623 (Tex.Cr.App.1983).

Where there has been some cooperation between police officers, the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists. See *Martinez v. State*, 635 S.W.2d 629 (Tex.App.—Austin 1982, pet. ref'd) (where cumulative information developed into reasonable suspicion to justify temporary detention); see also *Woodward v. State*, 668 S.W.2d 337 (Tex. Cr.App.1982), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985) (where cumulative information developed into probable cause to arrest). In this case, the officers suspected that the appellant had been involved in a burglary committed two days before his arrest. While under surveillance, the appellant determined that no one was at home at two separate houses, whereupon he went into the back yard of one house and tried to open the garage door of another house. Viewing the collective knowledge of the police officers involved in the investigation and surveillance of the appellant, we find that the officers had a reasonable suspicion that a crime had been committed, which would have justified a brief investigatory detention.

Having lawfully detained a suspect for the purpose of investigation, an officer may conduct a limited search for weapons where it is reasonably warranted for his safety or the safety of others. *Terry v. Ohio*, supra; *Cortinas v. State*, 571 S.W.2d 932 (Tex.Cr.App.1978). Where officers have temporarily detained the driver of an automobile under *Terry*, they may search those parts of the passenger compartment where a weapon may be hidden, if the officers have a reasonable belief that the detainee is dangerous and may gain access to a weapon. *Michigan v. Long*, 463 U.S.

1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

In *Michigan v. Long,* supra, police officers stopped the defendant after seeing him drive erratically and veer into a ditch. The defendant met the officers at the rear of his car, and they asked to see his vehicle registration. Following the defendant back to the driver's side of the car, the officers saw a large hunting knife on the floorboard. The officers then stopped the defendant and subjected him to a patdown search, which revealed no weapons. Continuing to search for weapons, an officer shined his flashlight into the interior of the car and saw something protruding from under the armrest on the front seat. He lifted the armrest and discovered an open pouch containing what appeared to be marihuana. The defendant was then arrested for possession of marihuana.

Upholding the search pursuant to the investigative detention, the Supreme Court held that "the area search that we approve is limited to a search *for weapons* in circumstances where the officers have a *reasonable belief that the suspect is potentially dangerous to them.*" 463 U.S. at 1052, 103 S.Ct. at 3482, 77 L.Ed.2d at 1222, n. 16 (emphasis added). The Court also noted, "[W]e stress that a *Terry* investigation, such as the one that occurred here, involves a police investigation 'at close range,' ... when the officer remains particularly vulnerable in part *because* a full custodial arrest has not been affected...." 463 U.S. at 1052, 103 S.Ct. at 3482, 77 L.Ed.2d at 1222 (citations to *Terry,* supra, omitted).[4]

In the instant case, the police pulled the appellant over, directed him to get out of his car, and took him at gunpoint to the rear of the car. Only then did Officer Eigner go back and look inside the passenger compartment. The officers did not conduct a patdown search of the appellant. Given the fact that the appellant was surrounded by police officers with drawn weapons, there was no question that the

4. Here, as we have previously determined, the search was conducted after the appellant had

appellant was about to escape. Nothing in the record indicates that the officers believed the appellant to be dangerous; nor does the record indicate that Eigner searched the appellant's car for weapons. Accordingly, we hold that the search of the appellant's car was outside the permissible scope of a search in the course of an investigative detention. Hence, the items discovered as a result of that search should not have been admitted in evidence. See Article 38.23, supra.

The judgments of the Court of Appeals and the trial court are reversed, and the cause is remanded to the trial court.

TEAGUE, J., concurs in result.

already been subjected to a full custodial arrest.