IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-369-CR





NOE ACOSTA,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 0920740, HONORABLE TOM BLACKWELL, JUDGE PRESIDING



 




 Appellant entered a negotiated plea of guilty to the offense of possession of a
controlled substance, cocaine, in an amount less than twenty-eight grams. See Tex. Health &
Safety Code Ann. § 481.115(b) (West 1992). Punishment was assessed by the court at
confinement for two years, probated. Appeal is limited to the court's action in overruling
appellant's motion to suppress. Tex. R. App. P. 40(b)(1). We will overrule appellant's point of
error and affirm the judgment of the trial court.

 The facts elicited at the motion to suppress hearing are undisputed. On the evening
of October 17, 1991, Officers Tony Bieze and Mike Schnoutz were "working street prostitution"
in an area on South Congress Avenue in Austin known as "the stroll." Nine days earlier,
Schnoutz had found Kathy Walters, a known prostitute, in a car with a man who had "his pants
down to his knees." Walters told Schnoutz that she was "tricking for heroin."

 On the night in question, undercover officer Mike Pollard had picked up Walters
in an effort to "make a case on her." While Walters agreed to have a sexual act with the officer,
the deal was not consummated because of their inability to agree on a price. Officer Bieze
testified that when working street prostitution, officers will watch known prostitutes until a "John"
picks one of them up in the roadway. Officers then "follow them to whatever location they're
going to make their deal as far as the sex act." In accordance with this procedure, Bieze and
Schnoutz followed Pollard and Walters until Pollard let her out of the car at the Austin Motel. 
Bieze and Schnoutz then followed Walters as she walked "back up to about the 1700 block" of
South Congress where she got in a car with appellant.

 Bieze and Schnoutz were able to follow appellant and Walters despite the fact "it
was obvious they were trying to lose somebody." Appellant drove to Stacey Park where he
stopped his vehicle. The officers stopped and positioned their unmarked police vehicle "nose to
nose" with appellant's car. After identifying themselves as police officers, they hollered to
appellant and Walters to "Put your hands up where we can see them." Bieze stated that such
action was taken because "that was for our protection, I didn't know Acosta [appellant]." 
Schnoutz approached appellant's side of the car with his pistol pointed toward appellant. After
noticing that appellant had his hands in his lap following their first directive to raise hands,
Schnoutz grabbed appellant and pulled him out of the vehicle. Appellant "reached in his left front
pocket, pulled out a vial and dropped it to the ground." Appellant volunteered that he was sorry,
that the vial contained cocaine, and that it was not his.

 Appellant asserts that the evidence of the cocaine was not admissible because it was
obtained by illegal detention and arrest. A succinct statement of the law relative to the temporary
detention of a suspicious person is set forth in Hoag v. State, 728 S.W.2d 375 (Tex. Crim. App.
1987):



Consistent with the Fourth Amendment, a police officer may briefly stop a
suspicious individual in order to determine his identity or to maintain the status quo
momentarily while obtaining more information. In order to justify a temporary
detention, the officer must have specific articulable facts which, in light of his
experience and personal knowledge, together with inferences from those facts,
would reasonably warrant the intrusion on the freedom of the citizen stopped for
further investigation. [T]he inarticulate hunch, suspicion, or good faith of the
investigating officer is never sufficient to justify a police officer to order a subject
to stop his motor vehicle or to order a subject from his automobile. There must
be a reasonable suspicion by the officer that some activity out of the ordinary is
occurring or has occurred, some suggestion to connect the detained person with the
unusual activity, and some indication that the activity is related to a crime.



Id. at 380 (citations omitted).  There are limitations on the intrusion of the freedom of a person
during an investigative stop. The detention must be temporary and last no longer than is
necessary to effectuate the purpose of the stop. Collier v. State, 843 S.W.2d 176, 177 (Tex.
App.--Houston [14th Dist.] 1992, no pet.). The police "may not carry out a full search of the
person or his effects. Nor may they verify their suspicions by means that approach an arrest." 
Curry v. State, 699 S.W.2d 331, 333 (Tex. App.--Houston [14th Dist.] 1985, pet. ref'd). In
Collier, the officers found nothing to confirm their suspicion of a drug deal or any other criminal
activity after they stopped and searched the car. The officers continued to detain the defendant
after failing to develop probable cause for a period of twenty minutes, during which time
defendant dropped a substance found to be cocaine. The court held that the continued detention
of defendant was without probable cause and that the defendant's abandonment of the cocaine was
the result of the illegal detention, and that the cocaine was inadmissible. In Curry, the court found
that the initial detention of the defendant in the airport was justified since the defendant fit certain
characteristics of the drug courier profile. The defendant was questioned, grabbed by the arm
when she started to leave, and carried to another room where she was strip-searched. The court
concluded that the search and detention were without probable cause and the evidence found
during the search should have been suppressed. 

 A person commits the offense of prostitution if he knowingly: (1) offers to
engage, agrees to engage, or engages in sexual conduct for a fee, or (2) solicits another in a
public place to engage with him in sexual conduct for hire. Tex. Penal Code Ann. § 43.02 (West
1989). Because of their observations, experience and knowledge about Walter's background, the
officers in the instant cause clearly had a basis for a reasonable suspicion that the offense of
prostitution was occurring or had occurred. We find that the officer's action in drawing his gun
and pulling appellant out of the car to be consistent with an investigative stop under the conditions
confronting the officers. The officers knew that Walters "tricked" for heroin and that appellant's
vehicle was parked in a park during nighttime hours. The officers did not know appellant, and
appellant did not raise his hands in response to the officers' first request. Under these
circumstances, the officers had a reasonable basis for taking the precautions they exercised for
their protection. Unlike the defendants in Collier and Curry, appellant dropped a vial that he
stated contained cocaine before he was ever questioned or searched.

 Moreover, a "peace officer may arrest, without warrant, persons found in
suspicious places and under circumstances which reasonably show that such persons have been
guilty of some felony or breach of peace, or threaten, or are about to commit some offense against
the law." Tex. Code Crim. Proc. Ann. § 14.03 (West Supp. 1993). "Rarely is any place
suspicious per se. Additional facts and reasonable inferences therefrom, however, may justifiably
render a place suspicious from a police officer's perspective." Muniz v. State, 851 S.W.2d 238,
251 (Tex. Crim. App. 1993). While the park where appellant and Walters parked on the night
in question was not a suspicious place per se, appellant's elusive driving after picking up Walters,
coupled with additional facts and inferences possessed by the officers, made the site a place where
officers could reasonably infer that prostitution and narcotic violations would occur. We conclude
that appellant and Walters were in a suspicious place under circumstances which showed that
appellant had or was about to commit some offense against the law. Hence, there was probable
cause for appellant's arrest.

 The judgment is affirmed.





 

 Tom G. Davis, Justice

Before Justices Powers, Aboussie and Davis*

Affirmed

Filed: December 15, 1993

Publish



* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).