**Opinion filed September 25, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00218-CR

_____

## ELI VERNON III A/K/A ELI MIMS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 43rd District Court**
**Parker County, Texas**
**Trial Court Cause No. CR13-0053**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Eli Vernon III a/k/a Eli Mims, of evading arrest or detention with a motor vehicle.[1] After the jury found at least two of the enhancement paragraphs to be true, it assessed Appellant's punishment at confinement for fifty years with no fine. The trial court sentenced Appellant accordingly. Appellant contends in a single issue on appeal that the trial court erred when it denied his motion for directed verdict. We affirm.

---

[1]TEX. PENAL CODE ANN. § 38.04 (West Supp. 2014).

## I. *The Charged Offense*

Appellant was charged by indictment with the offense of evading arrest or detention with a motor vehicle. The indictment alleged that, on or about November 14, 2012, using a motor vehicle, Appellant intentionally fled from Tracey Cryer, a person Appellant knew was a peace officer attempting lawfully to arrest or detain him. Appellant pleaded "not guilty" to the charge, and the case proceeded to trial.

## II. *Evidence at Trial*

B.J. Ellis testified that, on the afternoon of November 14, 2012, he was at a gas station in Weatherford when Appellant approached him and tried to sell him jewelry. Appellant showed Ellis receipts from Gordon's Jewelers in an attempt to prove that the jewelry was real. Appellant stated that the jewelry was purchased with a stolen credit card and that he was willing to sell the jewelry for "pennies on the dollar." Ellis believed that Appellant was involved in criminal activity and rejected his offer.

After Appellant walked away, Ellis called 911 and reported Appellant's behavior. Appellant drove off in what Ellis believed was a black Chevrolet Malibu, and Ellis followed him. Ellis continued to speak with the 911 dispatcher until the responding police officers located Appellant's vehicle. According to Ellis, the officers engaged Appellant and motioned for him to pull over. Appellant did not pull over; instead, he accelerated and erratically crossed lanes. Appellant was eventually detained, and Ellis confirmed that Appellant was the same individual who had attempted to sell him jewelry at the gas station.

The 911 call was played for the jury. On the recording, Ellis reports that he is traveling on Interstate 20, following a black Chevrolet Malibu, because the driver just attempted to sell him jewelry that was purchased with a stolen credit

card.  The 911 dispatcher can then be heard incorrectly relaying Ellis's report to police, stating that a man tried to sell Ellis a stolen credit card.

Captain William "Billy" Ray of the Willow Park Police Department (WPPD) testified that, on the afternoon of November 14, 2012, dispatch informed him that Ellis was following an individual who had just attempted to sell him a stolen credit card.  Captain Ray then headed to Ellis's location in his marked police vehicle.

Captain Ray caught up with Ellis and observed that Officer Tracey Cryer was already in pursuit of Appellant.  As Captain Ray and Officer Cryer chased Appellant, who was actually driving a black Chevrolet Impala,[2] they reached speeds up to 107 miles per hour.  During the pursuit, Appellant drove recklessly through traffic and erratically switched lanes.  Captain Ray noted that Appellant's behavior was consistent with someone who was fleeing from the police.

The pursuit finally ended when another car swerved in front of Appellant, which caused him to slam on his brakes and lose control of his vehicle.  Appellant's vehicle struck a guardrail before it rammed into a light pole in the median of the highway and came to a stop.

Captain Ray parked his patrol car directly in front of Appellant's vehicle to prevent him from driving away.  Captain Ray then drew his weapon and ordered Appellant to exit his vehicle.  Appellant complied with the order, and Officer Cryer assisted him out of the vehicle.[3]

Officer Cryer testified that, on November 14, 2012, he was notified by dispatch that the driver of a black Chevrolet Malibu, later confirmed to be Appellant, was reportedly in possession of stolen jewelry and/or a stolen credit

---

[2]Captain Ray noted that a Chevrolet Malibu and a Chevrolet Impala are similar in appearance.

[3]The video taken from the dashboard camera in Captain Ray's patrol vehicle was also played for the jury.  The video corroborated Captain Ray's testimony.

3

card. Officer Cryer then headed to Appellant's location in his marked patrol car. Officer Cryer eventually caught up to Appellant's vehicle and turned on his lights and siren.

Officer Cryer reported that the officers reached speeds up to 107 miles per hour while in pursuit of Appellant. Officer Cryer noted that Appellant drove recklessly and made it apparent that he did not want to stop. Appellant's vehicle eventually spun out of control, struck a guardrail, and hit a light pole in the median of the highway.

Officer Cryer subsequently searched Appellant's vehicle and found several small boxes containing various pieces of inexpensive costume jewelry, a bag of loose costume jewelry, and a number of receipts from Gordon's Jewelers. Officer Cryer noted that the receipts had several obvious errors on them that indicated they were fake.

Appellant made a motion for directed verdict and argued that the State had failed to prove each element of the charged offense. The trial court denied the motion.

### III. *Standard of Review*

A challenge to a trial court's ruling on a motion for directed verdict is, in actuality, a challenge to the sufficiency of the evidence to support the conviction. *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990). We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under that standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.

4

*Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

## IV. *Analysis*

Appellant argues that the trial court erred when it denied his motion for directed verdict. Appellant specifically claims that the officers who attempted to detain him were not lawfully attempting to detain him; he asserts that the officers lacked reasonable suspicion to detain him because the 911 dispatcher incorrectly informed them that he was in possession of a stolen credit card.

Under the Fourth Amendment, a warrantless detention of a person that amounts to less than a full-blown custodial arrest must be justified by reasonable suspicion. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Id.* "This standard is an objective one that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention." *Id.*

An officer is not required to confirm that a particular offense has been committed in order to have reasonable suspicion; it is enough that the information provided to the officer "is sufficiently detailed and reliable—*i.e.*, it supports more than an inarticulate hunch or intuition—to suggest that *something* of an apparently criminal nature is brewing." *Id.* at 917. Moreover, the officer need not be personally aware of every fact that objectively supports reasonable suspicion; "rather, 'the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists.'" *Id.* at 914 (quoting *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App.

5

1987)).  A 911 police dispatcher is generally regarded as a "cooperating officer" for purposes of making this determination.  *Id.*

Furthermore, "information provided to police from a citizen-informant who identifies himself and may be held to account for the accuracy and veracity of his report may be regarded as reliable."  *Id.* at 914–15.  When information is obtained from a known citizen-informant, the only question is whether the information, "viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot."  *Id.* at 915 (footnote omitted).

In this case, Ellis identified himself when he called 911; therefore, he could be held accountable for the accuracy and veracity of his report.  *See id.* at 914–15; *Parson v. State*, 392 S.W.3d 809, 816 (Tex. App.—Eastland 2012, pet. ref'd), *cert. denied*, 134 S.Ct. 134 (2013).  Under these circumstances, we find that the information Ellis provided to the police was reliable.  Ellis told the 911 dispatcher that someone had just attempted to sell him jewelry that had been purchased with a stolen credit card.  The 911 dispatcher then incorrectly relayed Ellis's report by telling police that a man had tried to sell Ellis a stolen credit card.  Captain Ray and Officer Cryer both testified that dispatch reported that Appellant was in possession of a stolen credit card.

Reasonable mistakes about facts may still legitimately justify an officer's conclusion that reasonable suspicion exists.  *Robinson v. State*, 377 S.W.3d 712, 720 (Tex. Crim. App. 2012).  Mistakes will not vitiate an officer's actions in hindsight so long as his actions were lawful under the facts as he reasonably, albeit mistakenly, perceived them to be.  *Id.* at 720–21.  Although the 911 dispatcher and the responding officers were mistaken about the specific details of Ellis's report, we find that those mistakes were reasonable.  Thus, the fact that Appellant was not

6

in possession of a stolen credit card at the time of his arrest does not negate the officers' earlier conclusion that reasonable suspicion existed to detain him.

Based on our review of the evidence, we conclude that the totality of the circumstances gave rise to a reasonable suspicion that Appellant was involved in criminal activity. The facts, as they were provided to Captain Ray and Officer Cryer, were sufficient to suggest that "*something* of an apparently criminal nature [was] brewing." *See Derichsweiler*, 348 S.W.3d at 917.

The evidence presented at trial established that Appellant led police officers on a chase that lasted several minutes and reached speeds up to 107 miles per hour. Given our earlier finding that the officers had reasonable suspicion to detain Appellant, we conclude that the evidence was sufficient because a rational jury could have found beyond a reasonable doubt that Appellant evaded arrest when he intentionally fled from the officers who were lawfully trying to arrest or detain him. We overrule Appellant's sole issue.

## V. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON
JUSTICE


September 25, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.