**Opinion filed August 31, 2018**



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00264-CR
_____

## JARED MACKENSIE MONROE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 25931A**

## MEMORANDUM OPINION

After the trial court denied his written pretrial motion to suppress, Appellant, Jared Mackensie Monroe, pleaded guilty to possession of cocaine, greater than or equal to one gram but less than four. The trial court deferred the adjudication of Appellant's guilt, placed Appellant on community supervision for five years, and imposed a fine of $1,000 fine. In one issue, Appellant contends the trial court erred in denying Appellant's motion to suppress. We affirm.

*Background Facts*

Viewing the evidence presented at the suppression hearing in the light most favorable to the trial court's ruling, the evidence showed that, on December 31, 2013, Officer Mary Guitar and her trainee, Officer Reese Brown, were patrolling a business area in Abilene. Officer Guitar had been a patrol officer with the Abilene Police Department for about seven years. After leaving a nearby 7-Eleven store, the officers began patrolling an area around a Kmart and other businesses in a shopping center. Officer Guitar saw Appellant's vehicle parked behind the businesses late at night after the businesses were closed. The vehicle was in a secluded area that was enclosed on three sides by the backs of other buildings and was not visible from Pioneer Street, the road that runs parallel to the side of the shopping center. Officer Guitar testified that they often patrol behind the 7-Eleven and the shopping center because the secluded place is a location in which someone could hide right before stealing beer from the 7-Eleven. Officer Guitar was familiar with the area because it had been part of her "beat" for five to six years. She testified that it was unusual to see a vehicle parked behind the closed businesses because, at that time of night, there were normally no vehicles parked in that location. She also testified that, within walking distance of the parked vehicle, there was a car wash that was a known drug area. The officers initiated contact at 10:49 p.m. and explained to Appellant why they were contacting him. Officer Guitar testified that Appellant had bloodshot eyes and seemed very nervous.

Appellant responded to the officers, stating that he was checking on his parents' business. Appellant testified at the suppression hearing that he told the officers that he was parked behind his parents' business because his father asked him to check on the business. Officer Brown obtained Appellant's driver's license, and the officers began to do a license check. While they were doing the license check, Officer Guitar requested a canine unit, which arrived within ten minutes, while the

2

officers were completing the license check. Although no outstanding warrants existed, Officer Guitar noted that Appellant had a prior marihuana conviction.

When Officer Kevin Easley arrived with his dog, Appellant was asked by Officer Brown to exit the vehicle, but he initially refused. Officer Easley testified that it was necessary for both Appellant and the officer's safety to move Appellant in order to conduct an open-air sniff around the vehicle because the dog is trained to protect the officer and could perceive Appellant as a threat. Officer Easley insisted that Appellant exit the vehicle and opened the vehicle door.

Appellant ultimately exited the vehicle, but because he was acting aggressively, he was patted down for officer safety. Officer Easley notified the officers that the canine alerted on the vehicle, and Appellant was placed in handcuffs. Appellant was taken to the front of the patrol car to begin a search of his person. When Officer Brown got to Appellant's shoes, Appellant became uncooperative. Appellant was arrested for resisting the search and taken to the police station, where cocaine was found in Appellant's sock.

*Standard of Review*

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Id.* at 922–23. First, we afford almost total deference to the trial court's determination of historical facts and of mixed questions of law and fact that turn on the weight or credibility of the evidence. *Id.* at 922–23. Second, we review de novo the trial court's determination of pure questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Id.* at 923.

*Analysis*

Appellant argues that the State did not have reasonable suspicion to detain Appellant. Specifically, there was no testimony of any observed traffic or other legal

3

violation that led to the detention. Appellant contends that his alleged nervousness, bloodshot eyes, and prior marihuana conviction do not constitute reasonable suspicion and that, therefore, he should not have been detained. The State responds that the time of night, the officers' knowledge of the area as a drug area, and the location of the vehicle behind a closed business late at night where vehicles are normally not found, taken together, provided sufficient reasonable suspicion to detain Appellant.

*Reasonable Suspicion*

The State bears the burden to show that the officers had a reasonable suspicion that the defendant either had committed an offense, or was about to do so, before they detained him. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (*citing United States v. Sokolow*, 490 U.S. 1, 7 (1989)). We review reasonable suspicion based on the totality of the circumstances. *Id.* at 914 & n.28 ("[T]he essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account." (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981))). This court's analysis considers "the cumulative information known to the cooperating officers at the time of the stop . . . in determining whether reasonable suspicion exists." *Id.* (quoting *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987)).

Law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968); *accord Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). An officer may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Sokolow*, 490 U.S. at 7 (quoting *Terry*, 392 U.S. at 30); *accord Ford*, 158 S.W.3d at 492.

4

"Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford*, 158 S.W.3d at 492. It is not necessary for an officer to pinpoint a specific crime when detaining someone for reasonable suspicion of criminal activity. *Derichsweiler*, 348 S.W.3d at 916–17 ("[I]t is enough that the totality of the circumstances, viewed objectively and in the aggregate, suggests the realistic possibility of a criminal motive, however amorphous, that was about to be acted upon."). However, the facts invoked to justify an investigative detention "must support more than a mere hunch or good-faith intuition that criminal activity is afoot." *Id.* at 916 (citing *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010)). "To support a reasonable suspicion, the articulable facts must show 'that some activity out of the ordinary has occurred, some suggestion to connect the detainee to the unusual activity, and *some indication that the unusual activity is related to crime*.'" *Id.* (quoting *Meeks v. State*, 653 S.W.2d 6, 12 (Tex. Crim. App. 1983)).

*Application to Facts*

In this case, there is no dispute that the officers initiated an investigatory detention. The sole question is whether there was reasonable suspicion to detain Appellant. In deciding whether reasonable suspicion existed we look at the facts available to the officer at the time of the detention. *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997).

Officer Guitar's basis for detaining Appellant included (1) the late hour—after businesses were closed, (2) it was very unusual to see vehicles behind closed businesses at that location and at that hour, (3) the vehicle was parked within walking distance of a car wash known to Officer Guitar as a narcotics distribution area, and (3) Appellant had bloodshot eyes and was acting nervously.

In deciding whether an officer had reasonable suspicion, we examine the facts that were available to the officer at the time of the investigative detention. *Crain*, 315 S.W.3d at 52–53. We evaluate the totality of the circumstances. *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013). "[I]ndividual circumstances may seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified." *Id.*

Appellant argues that this case is controlled by *Klare v. State*, 76 S.W.3d 68 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd), a case in which the Fourteenth Court of Appeals held that the facts apparent to the detaining officer did not provide reasonable suspicion for an investigative detention. In *Klare*, early on a December morning, the officer observed from a highway a white pickup behind a shopping center. When the officer circled around the building to approach the vehicle, it was gone. The officer drove down an adjoining road and spotted the pickup. He proceeded to stop the pickup and arrest Klare. The Fourteenth Court of Appeals concluded that the limited facts apparent to the officer—including the time of day, parking behind closed businesses, and general knowledge of previous burglaries in the area—did not amount to reasonable suspicion.

The State relies on *Tanner v. State*, 228 S.W.3d 852 (Tex. App.—Austin 2007, no pet.), and this court's cases that rely on *Tanner*, including *Hernandez v. State*, No. 11-08-00136-CR, 2009 WL 4931594 (Tex. App.—Eastland Dec. 17, 2009, no pet.) (mem. op., not designated for publication); *Boyd v. State*, 442 S.W.3d 463 (Tex. App.—Eastland 2013, pet. ref'd); and *Benson v. State*, No. 11-12-00125-CR, 2014 WL 2459693 (Tex. App.—Eastland May 22, 2014, no pet.) (mem. op., not designated for publication).

In *Tanner*, an officer observed a male and female pushing bicycles from a dark area behind a bar at 3:00 a.m., and the officer knew that the bar had closed long before. 228 S.W.3d at 854. As the officer approached the two people, he flashed

6

his patrol car's lights. *Id.* The woman stopped, but the man continued walking. *Id.* The *Tanner* court concluded that the stop was reasonable at its inception based on the time of night and the location and reasoned that, if the bar had been vandalized or robbed, "it is unlikely [the owner] would have been reassured to learn that [the officer] did not stop the two people he saw walking from behind the closed bar at 3:00 a.m." *Id.* at 859; *see Terry*, 392 U.S. at 23 (stating that "[i]t would have been poor police work indeed for an officer of 30 years' experience in the detection of thievery from stores in this same neighborhood to have failed to investigate this behavior further").

In this case, Officer Guitar had been with the force for about seven years and was familiar with the area. She observed Appellant's vehicle in a highly unusual place given the late time of night. The businesses were closed, and Appellant's vehicle was in a secluded location behind the businesses, surrounded by walls on three sides, and not visible from the main street. In addition, she knew that Appellant's vehicle was within walking distance of a narcotics distribution area situated around a car wash. *See Crain*, 315 S.W.3d at 53 (stating that the time of day and level of criminal activity in an area may not be sufficient on their own but may be factors in determining whether a reasonable suspicion exists). Officer Guitar observed that Appellant had bloodshot eyes and was acting very nervous. Although nervousness alone is not sufficient to establish reasonable suspicion for an investigative detention, it can do so in combination with other factors. *Hamal v. State*, 390 S.W.3d 302, 308 (Tex. Crim. App. 2012) (citing *Neal v. State*, 256 S.W.3d 264, 281–82 (Tex. Crim. App. 2008); *Balentine v. State*, 71 S.W.3d 763, 769 (Tex. Crim. App. 2002)).

This case is distinguishable from *Klare* in that the location of the vehicle behind the shopping center was not visible from the main street, the area was close to a known narcotics distribution area, and Appellant seemed nervous. Each of these

elements taken alone may not be sufficient to establish reasonable suspicion but can be sufficient in combination with other factors. *Crain*, 315 S.W.3d at 53. Given the totality of the circumstances, we conclude that Officer Guitar had sufficient, articulable facts to believe that some criminal activity was afoot. We, therefore, conclude that the investigative detention of Appellant was lawful.

*Conclusion*

Viewing the totality of the circumstances, we hold that the trial court did not err in denying Appellant's motion to suppress. We affirm the judgment of the trial court.

REBECCA SIMMONS
FORMER JUSTICE


August 31, 2018

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, J.,
Simmons, F.J.,[1] and Wright, S.C.J.[2]

Willson, J., not participating.

---

[1]Rebecca Simmons, Former Justice, Court of Appeals, 4th District of Texas at San Antonio, sitting by assignment.

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.