

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-23-00161-CR

LUCIO DELEON YANEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 22nd District Court
Hays County, Texas[1]
Trial Court No. CR-19-3860-A, Honorable Bruce Boyer, Presiding

April 25, 2024

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Lucio DeLeon Yanez, pleaded guilty pursuant to a plea bargain agreement to driving while intoxicated (felony/subsequent offense) and was sentenced

---

[1] Originally appealed to the Third Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 254 (Tex. 2022) (holding that a "transferee court that receives an appeal must decide the case in accordance with the precedent of the transferor court under principles of stare decisis").

by the trial court to seven years' confinement.[2]  On appeal, Appellant asserts the trial court erred by denying his motion to suppress (1) the State's blood evidence; (2) statements made during a custodial interrogation in violation of *Miranda*,[3] and (3) by failing to grant Appellant's request for a *Franks* hearing.[4]  We affirm the judgment.[5]

## Background

In November 2022, a superseding indictment was filed alleging that on or about August 22, 2019, Appellant was driving while intoxicated in a public place.  The indictment also alleged that in 2016 and 2001, Appellant was convicted of operating a motor vehicle while intoxicated and was finally convicted in 2017 of the felony offense of driving while intoxicated third or more.

Prior to his plea, Appellant filed two motions to suppress evidence.  In May 2020, Appellant filed his first motion seeking to suppress evidence obtained due to an improper arrest and search of him and his vehicle.  In August 2021, he filed a second motion seeking to suppress his statements made while he was allegedly in custody without being Mirandized.  He also asserted the State's blood evidence was unreliable and sought a

---

[2] *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b) (a third-degree felony).

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).  *See Dickerson v. United States*, 530 U.S. 428, 435, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000).

[4] "Under *Franks*, a defendant makes a substantial preliminary showing that a false statement was made in a warrant affidavit knowingly and intentionally, or with reckless disregard for the truth, may be entitled by the Fourth Amendment to a hearing, on the defendant's request." *Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)).

[5] Appellant presents multifarious issues that contain more than one specific ground of error per issue.  Nevertheless, we will review his arguments in the interest of justice as we are able to ascertain the errors about which he complains.  *Davidson v. State* 249 S.W.3d 709, 717 n.2 (Tex. App.—Austin 2008, pet. ref'd).

*Franks* hearing based on inconsistent statements by a deputy made in a search warrant to obtain his blood sample. In response to Appellant's motions, the trial court held multiple hearings.

*The First Motion to Suppress*

In Appellant's first motion to suppress, he sought to exclude all evidence obtained as a result of the traffic stop on grounds that the officer lacked reasonable suspicion for the stop; Appellant also objected to the manner in which blood evidence was obtained.

During hearings on Appellant's first motion to suppress,[6] Deputy Robert Blanchard testified that on November 22, 2019, while traveling south on Interstate 35, he observed a passenger car speeding past him. The vehicle weaved through cars and changed lanes without signaling, reaching speeds of up to 90 miles per hour. Despite Deputy Blanchard activating his emergency lights, Appellant continued to drive for approximately two miles before stopping.

Upon approaching the vehicle, Deputy Blanchard saw Appellant reach behind the passenger seat and shove something into an open case of beer. When asked for his driver's license, Appellant responded he did not have one. Appellant admitted to having no car insurance and presented an expired insurance document. When asked his name and date of birth, Appellant responded only with his birth date. The deputy noted Appellant's slurred speech and the odor of alcohol emanating from the vehicle.[7]

---

[6] At the first hearing, Appellant's counsel indicated that her two primary concerns were the initial stop, and the way Appellant was held down during the blood draw.

[7] Blanchard's body-cam video indicates Appellant first denied having anything to drink that day and subsequently revised his answer to "not much," and then to "one beer." In response to Blanchard's query

3

Observing Appellant's erratic behavior and the open beer case,[8] Deputy Blanchard asked Appellant to exit the vehicle; Appellant had difficulty maintaining balance.

After selecting a flat area and explaining he would be performing a horizontal gaze nystagmus test, Blanchard observed that Appellant "was slow to follow" the stimulus, and "then he would just look off and away and not track it with his eyes." Because of this, Deputy Blanchard abandoned the test after three attempts.

Deputies Zediker and Fanette arrived to assist.[9] Deputy Zediker attempted to administer additional field sobriety tests, during which Appellant inquired about being released if he passed. Zediker responded they were conducting an investigation and would not report to him whether he passed. Appellant responded, "[y]eah, because obviously you're going to take me in." Deputy Zediker replied, "[w]ell, yeah, I mean, we have to based on the amount of empty beer cans in the car." Appellant was placed in handcuffs, informed he was under arrest, and given *Miranda* warnings. Appellant refused to consent to a breath test and blood draw.

After some discussion,[10] Deputy Fanette prepared a probable cause affidavit for a blood draw.[11] In support, he cited Appellant's failure to maintain a lane of traffic, his delay

---

"[d]o you know why I stopped you by the way?" Appellant replied "[[u]h-[s]peeding I was trying to slow down."

[8] A later search by Deputy Blanchard revealed 12 open containers of beer in Appellant's vehicle.

[9] Zediker was Fanette's field training officer. Zediker had been with the Sheriff's office for three and a half years. He is certified to conduct standardized field sobriety tests.

[10] In a discussion intended as a training exercise, Zediker asked Fanette whether he believed Appellant would be charged with DWI (driving while intoxicated) or DWLI (driving while license invalid). The officers concluded Appellant would be charged with DWI.

[11] A detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, "the cumulative information known to the cooperating officers at the

before coming to a stop, balance problems, non-cooperation with sobriety testing, presence of empty beer containers, prior convictions for DWI, a smell of alcohol, and the odor of burnt marijuana. A judge issued a warrant for a blood draw. At the hospital, Appellant resisted the blood draw and had to be restrained.[12] According to Deputy Zediker, a registered nurse obtained the blood specimen in a sanitary environment, and the method employed by the nurse "seemed completely normal." Appellant's specimen was taken to the sheriff's office where it was placed in a secure refrigerator before being submitted to DPS in Austin.

The trial court orally found that reasonable suspicion for the traffic stop existed based on speeding and illegal lane changes. Probable cause to search the vehicle existed on account of Appellant's furtive movements: "I think at that point, they had a right to search the vehicle after the information was relayed about whether or not he was trying to secrete something in the back seat." As for the blood draw, the court noted that although Appellant may have been in some pain at the time, it did not find the officers "manhandled" Appellant or were doing anything to exacerbate his condition.

---

time of the stop is to be considered in determining whether reasonable suspicion exists." *Williams v. State*, No. 03-19-00793-CR, 2021 Tex. App. LEXIS 7351, *9–10 (Tex. App.—Austin Sept. 2, 2021, no pet.) (quoting *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987)). "Probable cause is evaluated based on the collective information known to the police, not just the stopping or arresting officer." *Trimble v. State*, No. 02-08-00325-CR, 2009 Tex. App. LEXIS 5509, at *9–10 (Tex. App.—Fort Worth July 16, 2009, no pet.) (collected cases cited therein). *See Dixon v. State*, No. 13-04-00433-CR, 2005 Tex. App. LEXIS 7041, at *3–4 (Tex. App.—Corpus Christi Aug. 26, 2005, pet. ref'd).

[12] Deputy Zediker testified during the blood draw, Appellant "began to yell and move his arms and body. So I requested Deputy Fanette come over, and we provided a more stable, secure holding to him." We note that although volume three of the reporter's record for September 1, 2020, indicates Deputy Fanette was deposed, the parties actually deposed Deputy Zediker instead as Deputy Fanette was unavailable. Although Deputy Fanette was available to give testimony at a subsequent hearing on Appellant's motions, Appellant declined.

5

*Second Motion to Suppress*

In a second hearing on a motion to suppress, Appellant urged the exclusion of the State's blood draw evidence, citing its potential unreliability. The argument was based on a *Brady* notice from the State which disclosed that the blood draw kit used for Appellant's sample was part of a lot recalled for ineffective anticoagulant/preservative agents. Specifically, a recall memorandum from the Texas Forensic Science Commission to the Department of Public Safety stated that approximately 300 tubes from a lot of several hundred thousand were distributed without containing sodium fluoride and potassium oxalate, used to preserve the blood and prevent it from clotting. The issue before the court was whether the tube containing Appellant's blood was one of the 300 that lacked the preservative compounds.

Jana Lowry, a DPS technician[13] who conducted the blood tests on the Appellant's specimen, testified that the purpose of anticoagulant in a testing tube is to prevent the blood from clotting. The purpose of preservative is to "maintain the alcohol concentration present in the blood tube." Lowry said that less than fifty of these tubes lacking the preservative compounds remained unaccounted for at the time of the hearing. She found Appellant's blood sample to be suitable for testing; Lowry described it as "normal and not clotted," and indicating to her that anticoagulant was present. Lowry added that even if the tube lacked anticoagulant, she would have no concern about the scientific reliability

---

[13] Lowry is a forensic scientist in the toxicology section of the DPS laboratory. She earned a Master's in Forensic Science and attended in-house training on alcohol analysis procedures, instrumentation use and the effects of alcohol on the body. She was licensed by the TSFC as a forensic analyst in toxicology interpretation.

of the results so long as "it was still whole blood for us to test in a suitable condition for testing."[14]

On cross-examination, the defense probed how possible *contamination* of the blood vial could affect test results. For example, Lowry responded to a hypothetical question[15] about the fungus *candida albicans* being introduced into the test tube by saying, "I'm not sure how yeast would get into the blood tube. But if somehow it did get inside of it, it's possible [that an unrefrigerated sample of blood could increase alcohol content in the test results]."[16] Lowry also responded to inquiry[17] about the possibility of the manufacturer misplacing other chemicals into the tubes; she testified she was not aware of any such occurrence. The trial court ruled that any questions about the blood sample raised by the recall notice was an issue that went to the weight of the State's blood evidence, not its admissibility, and would be heard at trial.

Appellant also sought a *Franks* hearing, arguing that Deputy Fanette's statements in the warrant for the blood draw contained inaccuracies, specifically about Appellant's erratic driving and other aspects of the stop. The defense highlighted discrepancies between the statements made in the warrant and what was evidenced in the deputies' body-cam footage. They questioned the conclusory nature of statements made in the

---

[14] Moreover, Lowry testified that if the blood had not been properly refrigerated, the alcohol content would decrease.

[15] Defense counsel asked, "If there were contamination during the blood draw, then that—then an unrefrigerated sample could accumulate additional alcohol through candida albicans over time, right?"

[16] Lowry also testified that DPS refrigerates its testing specimens.

[17] Defense counsel asked, "So if they made a mistake—if it's possible that the manufacturer made a mistake of leaving out the preservative, isn't it possible they made a mistake putting in a different chemical that they would have put in a different vial, as well?"

7

blood draw warrant by an officer who did not witness the stop, along with the deputies' descriptions of their attempts to conduct field sobriety tests. Further, the defense inquired if Appellant had been interrogated post-arrest without a Miranda warning. The trial court did not immediately decide on the request for a *Franks* hearing or on issues related to the custodial interrogation. Instead, requested additional briefing on the timing of Appellant's arrest and statements made.

In March 2023, Appellant pleaded guilty to driving while intoxicated (felony/subsequent offense) and was sentenced to seven years of confinement, pursuant to a plea agreement with the State. The Trial Court's Certification of Defendant's Right of Appeal certifies this criminal case "is a plea-bargain case, but matters were raised by written motion filed and ruled on before trial and not withdrawn or waived, and the defendant has the right of appeal." Pursuant to Texas Rule of Appellate Procedure, the certification also stated, "a defendant may appeal only: (A) those matters that were raised by written motion filed and ruled on before the trial or (B) after getting the trial court's permission to appeal." *See* TEX. R. APP. P. 25.2(a)(2)(A).

**Analysis**

Issue One: Blood Draw Reliability

In his first issue, Appellant challenges the reliability of the State's blood sample for three reasons: (1) lack of evidence that the blood draw followed verifiable procedures; (2) the State did not present a phlebotomist at the suppression hearing;[18] and (3) potential

---

[18] Although Appellant claims the trial court denied his motion for an independent blood analysis, the record reflects the motion was pending when Appellant entered his guilty plea. Appellant also asserts his constitutional rights to due process, effective assistance of counsel and right to confrontation were

contamination of the blood draw kit used for Appellant's specimen. We overrule Appellant's issue.

A trial court's ruling refusing to suppress evidence is generally reviewed for abused discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010).[19] We use a bifurcated standard, reviewing questions of law de novo. *State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019). We afford almost total deference to a trial court's determination of historical facts, especially if those are based on an assessment of credibility and demeanor. *Crain*, 315 S.W.3d at 48. When, as here, the trial court does not make express findings of fact, we view the evidence in a light most favorable to the trial court's ruling and will uphold the trial court's decision on any theory applicable to the case. *Id.*

Scientific testimony must be both reliable and relevant to assist a trier of fact to reach a conclusion in a case. *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). *See* TEX. R. EVID. 702. The proponent of scientific evidence bears the burden to demonstrate by clear and convincing evidence that scientific evidence is reliable. *Jackson v. State*, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000). This is achieved by demonstrating: (1) the validity of the underlying scientific theory; (2) the validity of the technique applying the theory; and (3) the proper application of the technique in the

---

violated. However, these arguments are being urged for the first time on appeal. To preserve error for appeal, Appellant was required to clearly articulate his constitutional objections in order to give the trial court an opportunity to rule. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (holding that an objection made on evidentiary grounds did not preserve argument made on constitutional grounds for appeal). Therefore, these complaints were waived. *Id.*

[19] A trial court does not abuse its discretion unless its decision is not within "the zone of reasonable disagreement." *Kelly v. State*, 824 S.W.2d 568, 574 (Tex. Crim. App. 1992) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)).

specific instance. *Id.* (citing *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992)). Here, the focus is on whether the State followed proper blood draw technique when obtaining his sample for testing.

Section 724.017 of the Transportation Code outlines the requirements for collecting a "blood specimen" at the direction of a peace officer for DWI investigations. *See* Tex. Transp. Code Ann. § 724.017(a), (a-1). A specimen is construed as a "usable sample." *State v. Neesley*, 239 S.W.3d 780, 785–86 (Tex. Crim. App. 2007). A "registered professional nurse" may collect the blood specimen, which "must be taken in a sanitary place." *See* Tex. Transp. Code Ann. § 724.017(b). Deputy Zediker testified Appellant's blood specimen was drawn at a hospital by a registered nurse in sanitary conditions, noting the method appeared "completely normal." Given this unchallenged evidence, the trial court could reasonably determine that Appellant's blood draw complied with the statutory requirements for collecting a blood specimen. *See Castellanos v. State,* 533 S.W.3d 414, 416–17 (Tex. App.—Corpus Christi-Edinburg 2016, pet. ref'd).

Regarding alleged defects with the tube containing Appellant's blood, Lowry testified that despite a recall affecting the entire lot, only fifty tubes out of several hundred thousand were defective and still unaccounted for. Lowry testified Appellant's tested blood was "normal and not clotted," which indicated the presence of an anticoagulant in the tube housing his sample. Nothing was presented to suggest a defect in Appellant's blood testing specimen except for unsubstantiated theories proposed by defense counsel regarding how a contaminated vial could hypothetically affect the test results.

Again, as the trial court found, we note that these questions about the reliability of Appellant's blood specimen would likely go to the weight of the evidence, not its admissibility. *Vitela v. State*, 649 S.W.3d 649, 657 (Tex. App.—San Antonio 2022, pet. ref'd). The trial court did not abuse its discretion by denying Appellant's motion to suppress evidence of the blood draw. Appellant's first issue is overruled.

Issue Two (*Miranda*) and Issue Three (*Franks*)

Appellant also complains that the trial court erroneously failed to suppress Appellant's statements which he claims were made in violation of his *Miranda* rights, and by denying his request for a *Franks* hearing. Because Appellant did not obtain a ruling on these requests or otherwise preserve them for review, we decline to address them.

Rule of Appellate Procedure 25.2 specifies that in a plea bargain case—where the defendant pleads guilty and punishment matches that recommended by the prosecutor and agreed upon by the defendant—the defendant may bring only three types of appellate issues: (1) that were raised by written motion filed and ruled on before trial; (2) after obtaining the trial court's permission to appeal; or (3) where the specific appeal is expressly authorized by statute. TEX. R. APP. P. 25.2(a)(2). When an appeal from a plea bargain is not authorized by Rule 25.2, the court of appeals, despite having jurisdiction to determine whether an appellant who entered a plea bargain is allowed to appeal under Rule 25.2(a)(2), must dismiss unauthorized appeals without further action, regardless of the basis of the appeals. *Chavez v. State*, 183 S.W.3d 675, 680 (Tex. Crim. App. 2006).

In determining which issues were preserved for appeal, we refer to the record, including Appellant's written plea agreement. *Jones v. State*, 488 S.W.3d 801, 805 (Tex.

Crim. App. 2016). According to the trial court's certification, Appellant may appeal "matters raised by written motion filed *and ruled on before trial* and not withdrawn or waived." Apart from a ruling on the admissibility of Appellant's blood sample (which is addressed in Issue one), we do not find any other ruling by the trial court on issues relating to Appellant's motions to suppress. When Appellant entered a guilty plea before the trial court ruled on the remaining issues, he forfeited the right to have those issues considered by this Court. *See Jones*, 488 S.W.3d at 804–05; *Chavez*, 183 S.W.3d at 680. Issues two and three are overruled.

**Conclusion**

We affirm the judgment.

Lawrence M. Doss
Justice

Do not publish.