**Reversed and Remanded; Opinion Filed December 4, 2019**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-01460-CR

**THE STATE OF TEXAS, Appellant**
**V.**
**GEORGE THOMPSON, Appellee**

**On Appeal from the County Criminal Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. MA17-13978-G**

## MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Nowell

The State appeals an order granting George Thompson's motion to suppress the evidence

in this driving while intoxicated case. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5). The

State contends the trial court abused its discretion because the evidence established the police

officer had reasonable suspicion to stop Thompson's vehicle shortly after a citizen called 911 to

report a hit and run accident with a vehicle similar to Thompson's. We conclude the trial court

abused its discretion, reverse the trial court's order, and remand for further proceedings.

### BACKGROUND

Thompson was stopped by an officer investigating a possible hit and run reported by a

911 caller a few minutes earlier. The officer noticed signs of intoxication and arrested appellant

for driving while intoxicated. Appellant filed a motion to suppress the evidence on the basis that

the officer lacked reasonable suspicion to stop his vehicle. The evidence at the hearing on the motion consists of the testimony of Sergeant David Podany, an audio recording of the 911 call, video recordings of Podany's in-car dash camera and body camera, and two maps of the area.

On October 4, 2017, at 11:58 p.m., Miyana Gibbons called 911 and reported, "I am going down Belt Line. A car just hit my car and kept going." She reported she was presently "crossing over Hampton," at the intersection of "Belt Line and Hampton in Desoto." Gibbons told the operator she had been following the car, but said "he's gone . . . I'm not gonna be able to catch up with him." She described the car as "a red, like, Challenger-type car." Gibbons said the car was not going toward Interstate 35, but "the other way, like going towards Cedar Hill." Gibbons did not see any part of the license plate. She saw that the driver "was a guy." When asked what his race was, Gibbons said the driver was "black." Gibbons gave her name, phone number, and a description of her car to the operator and agreed to stay at a Walgreen's at the intersection of Belt Line and Westmoreland until police arrived.

During argument on the motion, Thompson's attorney argued the 911 caller said they were past Camp Wisdom, which is not near the intersection of Hampton and Belt Line, and this statement called the caller's reliability into question. Gibbons did not mention Camp Wisdom on the 911 recording, yet the court and the attorneys appear to have accepted the representation. The trial court asked to hear from Gibbons, the 911 caller. The State informed the court that Gibbons was not present for the hearing and argued she was deemed reliable because she identified herself to the 911 operator. The court said she wanted to hear from the caller and would reset the hearing after the arresting officer testified.

Cedar Hill Police Sergeant Podany testified he was on patrol in the area of Belt Line Road between Cannady and Joe Wilson Road in Cedar Hill. He received a dispatch from the Desoto Police Department about Gibbons's 911 call. Podany knew from the dispatch that Desoto

officers had responded to a hit-and-run call at 11:58 p.m. in the area of Hampton Road and Belt Line Road. The suspect vehicle was a red Dodge "Challenger-type vehicle" travelling westbound on Belt Line. Podany was in the general area of where the vehicle was heading and learned from the dispatch that the car was driven by a black male. At 12:02 a.m., Podany pulled over a red Dodge Charger travelling west on Belt Line to investigate the possible hit and run accident. Podany testified he would have stopped either a Challenger or a Charger based on the dispatch. Podany made contact with Thompson and asked about the reported hit-and-run accident. During the encounter, Podany noticed signs of intoxication and ultimately arrested Thompson for DWI.

Podany also testified there were few cars on the road at the time. His in-car dash camera showed there was very little traffic when he saw Thompson's vehicle. The speed limit in that area is 45 miles per hour. Podany testified that at that time of night, with no traffic, it could take five minutes to travel from Hampton Road to the location of the stop, "[v]ersus being at noon and driving in that area, it could take 15 minutes." Based on a map of the area, Podany estimated it was 4.8 miles from the intersection of Hampton Road and Belt Line to the gas station where Thompson was stopped. The map contains an annotation indicating a driving time of ten minutes.

Two months later, the hearing resumed, but no additional evidence was admitted. The State informed the trial court that it had attempted to contact Gibbons and spoke with her mother. Gibbon's mother reported that she had moved to Louisiana. The State determined to proceed without her. Thompson's attorney objected based on the right to confront the witness and test her reliability. After additional argument from counsel, the trial court granted the motion to suppress.

The trial court signed a written order granting the motion to suppress. It found the officer stopped Thompson because he matched the description given in the 911 call and "because the 911 caller did not appear in court to be confronted by the defendant, there was no reasonable

suspicion to stop the defendant." The trial court also signed written findings of fact and conclusions of law. Those findings include:

- A 911 caller reported that "a person driving a red Challenger type car clipped her vehicle at or near Hampton Road and Camp Wisdom Road and did not stop."
- The caller lost the vehicle and later saw it near Belt Line Road and Hampton Road going towards Cedar Hill.
- The caller did not see the license plate and thought the driver was a "Black guy."
- The 911 call was placed at 11:58 p.m. and the Cedar Hill Police stopped Thompson at 12:02 a.m.
- The court recessed the original hearing "to allow the State to secure their witness, the 911 caller." When the hearing resumed, the State explained it had contacted her mother who said she moved to Louisiana. "However, the State had not had contact with the 911 caller who did provide her name and number. Also, she was not present in court for the hearing."

The court cited the law regarding corroboration necessary for anonymous tips to support reasonable suspicion then applied the law to the facts. The court concluded Thompson was stopped based only on the "radio communication of a citizen-informant regarding a 'red challenger type' vehicle with a 'Black guy.'" The court concluded that the officer stopped a red Charger, not a red Challenger, and "did not have corroborating information and stopped the wrong type of vehicle for no other reason than responding to the radio call." The court found that "in the absence of the 911 caller, no one can corroborate the caller's identification of the vehicle that allegedly struck her vehicle, and the Defendant has been denied the ability to confront a necessary witness against him." The court also found:

the call was made at 11:58 p.m. while she was at the intersection of Hampton Road and Beltline Road which is approximately 10 minutes (in light to moderate traffic) from the location of the stop which was made at 12:02 a.m., 4 minutes later which is not physically possible; especially since the 911 caller stated in her call that the driver of the suspect vehicle was not speeding.

The court concluded the officer did not have credible information to make this stop and lacked reasonable suspicion that a crime had been committed.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of the law to the facts de novo. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We afford almost complete deference to the trial court's determination of historical facts, "especially if those are based on an assessment of credibility and demeanor." *Brodnex*, 485 S.W.3d at 436 (quoting *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010)). We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review mixed questions of law and fact that do not turn on credibility and demeanor as well as purely legal questions de novo. *Brodnex*, 485 S.W.3d at 436. Although the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010), we review de novo "whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Brodnex*, 485 S.W.3d at 437 (quoting *Crain*, 315 S.W.3d at 48–49).

We review the record in the light most favorable to the trial court's ruling and will reverse its decision only if it is outside the zone of reasonable disagreement. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). When a trial court makes explicit fact findings, the appellate court determines whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). The appellate court then reviews the trial court's legal ruling de novo unless the trial court's supported-by-the-record explicit fact findings are also dispositive of the legal ruling. *Id*.

DISCUSSION

Under the Fourth Amendment, a warrantless detention of a person that amounts to less than a custodial arrest must be justified by a reasonable suspicion. *Derichsweiler v. State*, 348 S.W.3d 906, 914–15 (Tex. Crim. App. 2011). A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Id.* This standard is an objective one that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention. *Id.* It also looks to the totality of the circumstances; those circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. *Id.* "[T]he relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts." *Id.* (quoting *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997)).

The detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, "the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists." *Id.* (quoting *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987)). A 911 police dispatcher is ordinarily regarded as a "cooperating officer" for purposes of making this determination. *Id.* Finally, information provided to police from a citizen-informant who identifies himself and may be held to account for the accuracy and veracity of his report may be regarded as reliable. *Id.* In such a scenario, the only question is whether the information that the known citizen-informant provides, viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal

activity is afoot. *Id.*

The trial court in this case treated the 911 caller as anonymous and therefore required more corroboration than that required for an identified citizen-informant. *See Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011) (inverse relationship exists between reliability of informant and amount of corroboration required; "the less reliable the tip, the more information is needed"); *Taflinger v. State*, 414 S.W.3d 881, 885 (Tex. App.—Houston [1st Dist.] 2013, no pet.). However, the record establishes that Gibbons identified herself, gave her phone number and a description of her car, and agreed to wait for officers. Thus, the trial court erred in applying the anonymous-tip standard to the facts of this case. Because Gibbons identified herself and could be held to account for the accuracy and veracity of her report, her report may be regarded as reliable. *Martinez*, 348 S.W.3d at 923 ("[W]hen the informant provides self-identifying information that makes himself accountable for the intervention, the degree of reliability significantly improves."); *Derichsweiler*, 348 S.W.3d at 915; *Brother v. State*, 166 S.W.3d 255, 257–58 (Tex. Crim. App. 2005).

The trial court found the 911 caller reported a hit and run accident "at or near Hampton Road and Camp Wisdom Road." However, the recording of the 911 call establishes that Gibbons never mentioned Camp Wisdom Road and never reported that the accident occurred near there. Gibbons reported she was on Belt Line road and stated "a car just hit my car and kept on going." We conclude the record does not support the fact finding that the caller reported the accident occurred at or near Hampton Road and Camp Wisdom Road. Regarding the trial court's finding that Gibbons stated the driver of the suspect vehicle was not speeding, Gibbons did not say on the recording that the other driver was not speeding. Indeed, her only reference to the speed of the other vehicle was "he's gone . . . I'm not gonna be able to catch up with him."

The trial court concluded that, in the absence of the 911 caller, the "Defendant has been

denied the ability to confront a necessary witness against him." However, this Court has held that the Confrontation Clause does not apply at a pretrial suppression hearing. *Vanmeter v. State*, 165 S.W.3d 68, 74 (Tex. App.—Dallas 2005, pet. ref'd). Further, any additional information the caller might provide at the hearing would not have been available to the officers at the time of the stop and would not be relevant to the reasonable suspicion inquiry. Instead, the trial court should have focused on "whether the information that the known citizen-informant provides, viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot." *Derichsweiler*, 348 S.W.3d at 915.

The trial court's finding that police stopped the "wrong type" of vehicle is not supported by the record. The 911 caller described the vehicle as a red "Challenger-type" vehicle. Podany stopped a red Charger traveling in the reported direction four minutes after the call. Podany testified he would not have "changed [his] view if the car that was ultimately pulled over was a Challenger and not a Charger." The trial court recognized the similarity between a Challenger and Charger, at one point saying, "In my mind, there is nothing so greatly different between a red Challenger and a red Charger that the officer wouldn't be wrong pulling one or the other over and at least being able to investigate." Even if the police were mistaken about the vehicle, the mistake would not negate the facts supporting a reasonable suspicion that is was the correct vehicle. *See Cornejo v. State*, 917 S.W.2d 480, 483 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (mistaken identification of defendant as perpetrator of drive-by shooting did not negate initial reasonableness of officer's probable cause determination). "An investigatory detention or an arrest is not invalid merely because an officer relies upon reasonably trustworthy information that later proves to be erroneous." *Mount v. State*, 217 S.W.3d 716, 728 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (officer had reasonable suspicion to stop "similar" "tan or goldish

–8–

colored or silver, light colored" Cadillac pickup based on report of stolen white Cadillac pickup in the vicinity). The officer in *Mount*, "after receiving the report over his radio, was justified in searching for and stopping a vehicle that was similar to the vehicle described by the caller." *Id*.

The record shows that Gibbons provided the 911 operator with the following facts:

- She was on Belt Line Road crossing over Hampton;
- A car hit her and kept on going;
- The other car was "gone" and she was not going to be able to catch up with him;
- The car was a red "Challenger-type" car;
- The care was heading west on Belt Line towards Cedar Hill;
- The driver was a black male.

Podany testified he knew from the 911 dispatch that there was a hit-and-run call; officers were dispatched to the area of Hampton and Belt Line; the suspect car was traveling westbound on Belt Line; the car was a red "Challenger-type vehicle"; the driver was a black male; and the car had been in the area of Belt Line and Hampton around 11:58 p.m. Additionally, Podany knew he was on patrol on Belt Line in the area where the vehicle was traveling; there were few cars on the road; and he would have stopped either a red Challenger or a red Charger based on the dispatch.

Based on the totality of the circumstances, it was objectively reasonable for Podany to suspect that a red "Challenger-type" vehicle travelling west on Belt Line four minutes after the call, when there was little traffic on the road, could have been the vehicle involved in the reported hit-and-run accident. He was justified in stopping the vehicle to verify this reasonable suspicion.

We conclude the trial court abused its discretion by granting the motion to suppress. We sustain the State's issue.

**CONCLUSION**

We reverse the trial court's order granting the motion to suppress and remand this case for further proceedings.

/Erin A. Nowell/

ERIN A. NOWELL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
181460F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-18-01460-CR     V.

GEORGE THOMPSON, Appellee

On Appeal from the County Criminal Court No. 6, Dallas County, Texas
Trial Court Cause No. MA17-13978-G.
Opinion delivered by Justice Nowell.
Justices Myers and Osborne participating.

Based on the Court's opinion of this date, the trial court's November 15, 2018 order granting motion to suppress is **REVERSED** and the cause **REMANDED** for further proceedings.

Judgment entered this 4th day of December, 2019.